1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                         DISTRICT OF NEVADA

7    CHARLES LAFFERTY,                    Case No. 3:16-cv-00279- RCJ-WGC

8                          Plaintiff,     **REPORT & RECOMMENDATION OF**
                                          **U.S. MAGISTRATE JUDGE**
9         v.
                                          Re: ECF No. 13
10   BRIAN WILLIAMS, et. al.,

11                        Defendants.

12

13        This Report and Recommendation is made to the Honorable Robert C. Jones, Senior

14   United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant

15   to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

16        Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 13, 13-1 to 13-

17   3, 18, 18-1 to 18-3.)[1] Plaintiff filed a response. (ECF No. 17.) Defendants filed a reply. (ECF No.

18   21.)[2]

19        After a thorough review, the court recommends that Defendants' motion be denied.

20                              **I. BACKGROUND**

21        Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

22   proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 6.) The events

23   giving rise to this action took place while Plaintiff was housed at Southern Desert Correctional

24   Center (SDCC). (*Id.*) Defendants are Dale Roberson, Glenn Fowler, and Isaiah Santos. (*Id.*,

---

25

26        [1] At a hearing on August 3, 2017, Plaintiff noted that under NDOC regulations, the official copy of his
     grievance should have been stored at Southern Desert Correctional Center, and Defendants had provided a copy of
27   the document stored at Ely State Prison. The court granted Defendants leave to submit the official grievance, which
     Defendants did on August 11, 2017. (ECF No. 18, 18-1 to 18-3.)

28        [2] The court has concurrently issued an order granting Defendants' motion to withdraw the reply originally
     filed (ECF No. 19), and substitute it with a corrected version (ECF No. 21).

1    Screening Order at ECF No. 5.)

2    On screening, the court determined Plaintiff could proceed with a single Eighth

3    Amendment excessive force claim against Roberson, Fowler, and Santos. (ECF No. 5.) The claim

4    is based on allegations that Roberson held Plaintiff immobile on the ground while Fowler struck

5    Plaintiff in the head with a closed fist upwards of fifteen times. (ECF No. 6 at 4.) After he had

6    been fully restrained, was lying on the ground, and posed no threat, Plaintiff claims that Santos

7    sprayed him in the face with chemical agents without warning. (*Id.*) Then, to move Plaintiff,

8    Roberson carried him by the chain on his shackles and Fowler carried him by the hair. (*Id.*)

9    Defendants move for summary judgment, arguing that Plaintiff failed to properly exhaust

10    his administrative remedies.

11                                    **II. LEGAL STANDARD**

12    "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

13    as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468,

14    1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all

15    reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810

16    (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall

17    grant summary judgment if the movant shows that there is no genuine dispute as to any material

18    fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other

19    hand, where reasonable minds could differ on the material facts at issue, summary judgment is not

20    appropriate. *See Anderson*, 477 U.S. at 250.

21    A party asserting that a fact cannot be or is genuinely disputed must support the
      assertion by:

22    (A) citing to particular parts of materials in the record, including depositions,
      documents, electronically stored information, affidavits or declarations,

23    stipulations (including those made for purposes of the motion only), admissions,
      interrogatory answers, or other materials; or

24    (B) showing that the materials cited do not establish the absence or presence of a

25    genuine dispute, or that an adverse party cannot produce admissible evidence to
      support the fact.

26    Fed. R. Civ. P. 56(c)(1)(A), (B).

27    If a party relies on an affidavit or declaration to support or oppose a motion, it "must be

28    made on personal knowledge, set out facts that would be admissible in evidence, and show that

1    the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2         In evaluating whether or not summary judgment is appropriate, three steps are necessary:

3    (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as

4    to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

5    *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

6    the outcome of the suit under the governing law will properly preclude the entry of summary

7    judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

8         In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

9    "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

10   come forward with evidence which would entitle it to a directed verdict if the evidence went

11   uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the

12   absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage*

13   *Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In

14   contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving

15   party can meet its burden in two ways: (1) by presenting evidence to negate an essential element

16   of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a

17   showing sufficient to establish an element essential to that party's case on which that party will

18   bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

19        If the moving party satisfies its initial burden, the burden shifts to the opposing party to

20   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

21   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of

22   material fact, the opposing party need not establish a genuine dispute of material fact conclusively

23   in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to

24   resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec.*

25   *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted).

26   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

27   party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The

28   nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that

are unsupported by factual data. *Id.* Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-50 (citations omitted).

### III. DISCUSSION

**A. Exhaustion Standard**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id.*, *overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) ( which had held that the failure to exhaust should be raised in an "unenumerated Rule 12(b)

- 4 -

1   motion").

2         As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows

3   a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts

4   are disputed, summary judgment should be denied, and the district judge rather than a jury should

5   determine the facts [in a preliminary proceeding]." *Id.*, 1168, 1170-71 (citations omitted).

6   "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If

7   discovery is appropriate, the district court may in its discretion limit discovery to evidence

8   concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the

9   merits of the suit." *Id.* at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). If there

10  are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id.*

11  at 1171.

12        Once a defendant shows that the plaintiff did not exhaust available administrative remedies,

13  the burden shifts to the plaintiff "to come forward with evidence showing that there is something

14  in his particular case that made the existing and generally available administrative remedies

15  effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778

16  n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate plaintiff did

17  not meet his burden when he failed to identify any actions prison staff took that impeded his ability

18  to exhaust his administrative remedies, or otherwise explain why he failed to comply with the

19  administrative remedies process). The ultimate burden of proof, however, remains with the

20  defendant. *Id.*

21        The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely

22  or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion."

23  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency

24  holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.*

25  (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus,

26  "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison

27  grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v.*

28  *Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t

1    is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

2    *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available

3    administrative remedies "under the PLRA despite failing to comply with a procedural rule if prison

4    officials ignore the procedural problem and render a decision on the merits of the grievance at each

5    available step of the administrative process." *Reyes*, 810 F.3d at 658.

6         To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v.*

7    *Blake*, 136 S.Ct.1850, 1858 (2016). "Accordingly, an inmate is required to exhaust those, but only

8    those, grievance procedures that are 'capable of use' to obtain 'some relief for the action

9    complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738).

10   **B. Undisputed Facts**

11        The alleged excessive force incident took place on February 9, 2016, at SDCC, and

12   Plaintiff was thereafter transferred to Ely State Prison (ESP). (ECF No. 13 at 5:23-24.)

13        On February 16, 2016, Plaintiff filed an informal level grievance, grievance number

14   2006-30-18000, addressing the excessive force allegations raised in his Complaint. (ECF No. 18-

15   3 at 2-3.) The informal level grievance did mention that he sought compensation for pain and

16   suffering. (*Id.* at 3.)

17        NDOC's internal inmate grievance report indicates that the matter was referred to the

18   Office of the Inspector General (IG) for review. (ECF No. 18-3 at 4.) An improper grievance

19   memorandum was issued, advising Plaintiff that the grievance had been referred to the IG for

20   investigation. (ECF No. 13-2 at 4.) In addition, he was advised that his grievance was not

21   accepted, with a statement that pursuant to AR 740.07(B), an Administrative Claim Form, DOC

22   3095, must be submitted with a grievance seeking monetary restitution related to personal injury,

23   tort, or civil rights claims. (*Id.*at 5.) He was then told he could "resubmit his grievance, if

24   applicable, after [he had] corrected all deficiencies noted above." (*Id.*) While the memorandum

25   was dated March 25, 2016, Plaintiff signed that document on June 3, 2016. (ECF No. 13-2 at 4.)

26        Plaintiff then filed a first level grievance on April 4, 2016. (ECF No. 18-3 at 6-12.) He

27   stated that the informal grievance was not responded to within the time frame dictated by AR

28   740, and so he was continuing to the first level. (*Id.* at 6.) He included the NDOC Administrative

1    Claim Form concerning the $100,000 in damages sought. (*Id*. at 10-12.)

2           An improper grievance memorandum was issued. (ECF No. 18-3 at 14.) Plaintiff was

3    advised: "Grievance not accepted. Transmission of the grievance to another institution may

4    result in exceeding response timeframes. (AR 740.05.12(B)) Additionally-Your grievance was

5    referred to the Office of the Inspector General. Timeframes are suspended until a disposition is

6    received from the Inspector General's Office. (AR 740.05.11(B)[)]." (*Id*.) While the

7    memorandum was dated May 18, 2016, Plaintiff signed this document on July 21, 2016. (*Id*.)

8           Plaintiff filed a second level grievance dated May 20, 2016. (ECF No. 13-2 at 13.) He

9    stated he was continuing to the last level of the grievance process because he submitted his

10   informal and first level grievances, and the timeframes had expired without receiving a response.

11   (ECF No. 13-2 at 13-14.) The grievance coordinator signed this on May 23, 2016. (*Id*.) The

12   space for the response references "DOC 3098." (*Id*.)  Plaintiff signed the response portion of the

13   actual grievance on June 24, 2016. (*Id*.)

14          An improper grievance memorandum was issued, advising Plaintiff: "Per AR 740.03, 8,

15   B [t]he inmate may proceed to the next grievance level, except at the Second Level, if a response

16   is overdue. Wait for the response. If your grievance needs to go to another institution the time

17   frames stop but are adhere[d] to as much as possible." (ECF No. 13-2 at 15.) The memorandum

18   was dated May 27, 2016, but was signed by Plaintiff on June 24, 2016. (*Id*.)

19          Plaintiff initiated his lawsuit on May 25, 2016. (ECF No. 1.)

20   **C. Summary of Argument**

21          Defendants argue that Plaintiff failed to exhaust his administrative remedies. They

22   contend that all of the grievances were rejected; he failed to await a response at the informal, first

23   or second levels; he did not allow time for completion of the IG investigation; he did not

24   properly follow the steps laid out in Administrative Regulation (AR) 740; and, he waited only

25   five days after filing his second level grievance before he initiated this lawsuit.

26          First, insofar as Plaintiff's informal level grievance was not accepted for failing to

27   include the administrative claim form, Plaintiff asserts that he did not state in the informal level

28   grievance he was seeking monetary damages (even though the grievance did reference

1    compensation). As a result, he contends that the grievance was screened out for an improper

2    purpose, and administrative remedies were unavailable to him.

3            Second, Plaintiff takes issue with Defendants' argument that the grievance timeframes

4    were suspended, and he improperly proceeded with his grievance. He claims that as of the date

5    of his mediation in this case, there still was no record of any investigation being conducted by

6    the IG, which was over a year after it had been referred. As to the statement that the grievance

7    timeframes are suspended when an inmate is transferred from the responding institution, Plaintiff

8    argues that the amount of time his grievances sat at the responding institution far surpassed the

9    timeframes set out in AR 740. He references a handout given to inmates at ESP concerning the

10   grievance process, which instructs inmates to continue on if the time limits are violated at any

11   level of the grievance process. (ECF No. 17 at 25-28.) This form, which is from "NV Cure,"

12   advises inmates that they should proceed with a first level grievance if the inmate does not

13   receive a response to the informal level grievance within 45 days, and should proceed with a

14   second level grievance if a response to the first level grievance is not received within forty-five

15   days. (*Id*. at 26-27.) It advises that prison officials have sixty days to respond to the second level

16   grievance, which ends the grievance procedure, stating that the inmate has exhausted when the

17   sixty-day time period expires or a response is received prior to expiration of the sixty days. He

18   contends that his administrative remedies were exhausted when the timeframes on both his

19   informal and first level grievances expired.

20           In their reply Defendants argue, first, that the informal level grievance was properly

21   rejected for failing to include an administrative claim form when he stated in his informal level

22   grievance he sought compensation for pain and suffering.

23           Second, they state that under AR 740, grievance timeframes do not apply where an

24   inmate has been transferred or a matter has been forwarded to the IG for investigation. Here,

25   Plaintiff was transferred from SDCC to ESP, and the matter was referred to the IG for

26   investigation. Defendants assert that under AR 740.11(2), when an inmate is transferred,

27   grievances are processed as soon as practicable and timeframes "shall be adhered to as closely as

28   possible." Plaintiff's informal level grievance, filed at ESP, was transferred to SDCC, where the

1  alleged incident had occurred, and it was rejected and referred to the IG. Insofar as the matter

2  was referred to the IG for investigation, AR 740.05.11 provides that the timeframes are

3  suspended until a disposition is received from the IG.  Accordingly, they claim the normal

4  timeframes were suspended. Defendants acknowledge, however, that as of the filing of their

5  reply on August 16, 2017, the IG had not yet even made a determination as to whether to open a

6  formal investigation. (ECF No. 21 at 5.)

7      Third, Defendants argue that the process was available to Plaintiff, but he simply did not

8  wait for the responses.

9      Finally, Defendants assert that the handout Plaintiff references was not provided by NDOC

10 or ESP, but came from NV-Cure, an independent prisoner's rights organization unaffiliated with

11 NDOC.

12 **D. AR 740**

13     AR 740 governs NDOC's grievance process. (ECF No. 13-1.) NDOC requires inmates to

14 try to resolve issues through discussion with a caseworker, and then proceed through the

15 informal, first and second levels of the grievance process. (*Id*. at 5-10.)

16     An inmate dissatisfied with the response to a grievance at any level may appeal to the

17 next level. (*Id*. at 4, AR 740.03.6.) If a response is overdue, the inmate may proceed to the next

18 grievance level, "except at the Second Level." (*Id*. at 5, AR 740.08.B.)[3]

19     All grievances submitted are to include the remedy sought by the inmate, and a failure to

20 do so will be considered an improper grievance and will be returned to the inmate using Form

21 DOC 3098-Improper Grievance Memorandum. (*Id*. at 7, ECF No. 740.05.6.) If the remedy

22 includes monetary restitution or damages, the inmate will get DOC-3095, the Administrative

23 Claim Form, which is to be completed and submitted in addition to the grievance. (*Id*., AR

24 740.05.7, B.)

25     The time limit for a response to an informal or first level grievance is forty-five days from

26 the date it is received by the grievance coordinator. (*Id*. at 8-9, AR 740.05.12, AR 740.06.4.) The

27 time limit for a response to a second level grievance is sixty days from the date received by the

28

---

[3] Presumably, this is because there is no further grievance level to pursue within the prison.

1  grievance coordinator. (*Id.* at 9, AR 740.07.3.)

2      Allegations of "inmate abuse" are to be immediately reported to the "AWs, the Warden,

3  and the Inspector General's Office[.]" (*Id.* at 3-4, AR 740.03.2.) Grievances alleging "staff

4  misconduct" are reviewed by the Warden, and if appropriate, forwarded to the IG for

5  investigation. (*Id.* at 7, AR 740.05.11.) The informal response will reflect this action being

6  initiated. (*Id.*, AR 740.05.11.A.) When this occurs, "[t]imeframes are suspended until a

7  disposition is received from the Inspector General's Office." (*Id.*, AR 740.05.11.B.)

8      When an inmate is "transferred to another institution pending the resolution of a filed

9  grievance, the inmate shall have the grievance completed at the sending institution at all levels."

10  (*Id.* at 13, AR 740.11.1.) The receiving institution, however, logs in and tracks the grievance. (*Id.*,

11  AR 740.11.1.A.)  Responses are sent via first class mail at the receiving institution. (*Id.*, AR

12  740.11.1.B.) "Timeframes do not apply if the inmate has been transferred. Grievances shall be

13  processed as soon as practicable and timeframes shall be adhered to as closely as possible." (*Id.*,

14  AR 740.11.2.)

15  **E. Analysis**

16      The court finds that under the circumstances presented in the record, administrative

17  remedies were unavailable to Plaintiff.

18      "[T]he PLRA does not require exhaustion when circumstances render administrative

19  remedies 'effectively unavailable.'" *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017).

20      In *Ross v. Blake*, the Supreme Court noted three instances where administrative

21  procedures were unavailable: (1): "when (despite what regulations or guidance materials may

22  promise) it operates as a simple dead end-with officers unable or consistently unwilling to

23  provide any relief to aggrieved inmates"; (2) "an administrative scheme might be so opaque that

24  it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to

25  provide relief, but no ordinary prisoner can discern or navigate it." Such as "[w]hen rules are 'so

26  confusing that … no reasonable prisoner can use them,' then 'they are no longer available.'";

27  (3) "when prison administrators thwart inmates from taking advantage of a grievance process

28  through machination, misrepresentation, or intimidation." *Ross*, 136 S.Ct. at 1859-60 (citations

1    omitted).

2        The Ninth Circuit characterized this list as a "non-exhaustive." Andres, 867 F.3d at 1078.

3    It has held that various other circumstances render administrative remedies unavailable,

4    including the failure of prison officials to properly process a prisoner's grievance. Id. at 1079

5    (discussing that the failure to timely respond to inmate's properly filed grievance may render

6    remedies unavailable).

7        First, Plaintiff was told that his grievance was referred to the IG for investigation, but was

8    simultaneously advised that his grievance was not accepted because it did not include the

9    administrative claim form.

10        Second, the informal and first level grievance responses exceeded the normal forty-five

11    day timeframe for the prison to respond to grievances.[4] Before he received the response to the

12    informal level grievance, he submitted the administrative claim form with the first level

13    grievance.

14        Third, Plaintiff was told in the memorandum responding to the first level grievance that

15    the grievance was "not accepted" because transmission of the grievance to another facility "may

16    result in exceeding response timeframes," and that the grievance had been referred to the IG,

17    which suspends timeframes until a disposition from the IG is received.

18        Finally, it appears that Plaintiff waited just over forty-five days to file his second level

19    grievance when he had not yet received a response to the first level grievance (he signed the first

20    level improper grievance memorandum on July 21, 2016). The second level grievance is dated

21    May 20, 2016, and he filed this action on May 25, 2016.

22        The court finds that the confusing posture at the informal and first levels, where Plaintiff

23    was told his grievance was not accepted but also that it was being referred to the IG, along with

24    the provisions of AR 740 (that fail to specifically explain to the inmate when and how he is to

25    exhaust his administrative remedies when he is transferred or when a matter is referred to the IG)

26    rendered the grievance process unavailable to Plaintiff at the time he filed his action.

27

28        [4] The informal level grievance was dated February 16, 2016, but Plaintiff did not sign the improper grievance memorandum until June 3, 2016. The first level grievance was dated April 4, 2016, but Plaintiff did not sign the improper grievance memorandum until July 21, 2016.

1    The Supreme Court discussed a somewhat similar scenario in *Ross v. Blake*. There, the

2    prison officials argued that the inmate failed to seek relief through the grievance process, but

3    there was a parallel provision requiring an inspector general to investigate charges of staff

4    misconduct. *Ross*, 136 S.Ct. at 1860. The inmate argued that when that investigation is

5    commenced, an inmate cannot obtain relief through the grievance process, even if the handbook

6    said they could. *Id.* The evidence in the record gave credence to the inmate's position. *Id.* at

7    1861. Ultimately, the Supreme Court remanded the case for an analysis of whether

8    administrative remedies were available to the inmate, but acknowledged that such a scenario

9    could lead to a conclusion that the remedies were unavailable. *Id.* at 1862.

10    Here, Plaintiff's informal grievance was referred to the IG and simultaneously not

11    accepted. The memorandum contained "form" language that Plaintiff could "resubmit" the

12    grievance, "if applicable." Therefore, at this stage it was not clear whether the grievance was not

13    accepted, or was proceeding because it had been referred to the IG.

14    Next, the court will address Defendants' argument that Plaintiff did not properly exhaust

15    his remedies because he did not include the administrative claim form with the informal level

16    grievance. It appears that before Plaintiff even received the memorandum in response to the

17    informal level grievance, he had submitted the first level grievance with the administrative claim

18    form. The improper grievance memorandum addressing the first level grievance did not mention

19    anything about the first level not being accepted because the form had not been submitted with

20    the informal level grievance. The first level grievance memorandum simply stated that the

21    grievance was not accepted, citing the provisions of AR 740 that suspend grievance timeframes

22    when an inmate is transferred to another facility, and when referred to the IG. Therefore, Plaintiff

23    did submit the administrative claim form in support of his request for damages.

24    The court will now discuss Defendants' argument that the grievance was improper

25    because timeframes were suspended because of Plaintiff's transfer from SDCC to ESP.

26    AR 740.11 discusses what happens to a grievance when an incident that is grieved occurs at one

27    institution and then the inmate is transferred to another institution. The "sending institution," i.e.,

28    where the issue that is the subject of the grievance occurred, completes the grievance, but it is

1   logged and tracked by the "receiving institution," i.e., where the inmate is transferred. The

2   regulation says that when an inmate is transferred "[t]imeframes do not apply[,]" but

3   "[g]rievances shall be processed as soon as practicable and timeframes shall be adhered to as

4   closely as possible."

5         The regulation gives the inmate no guidance as to when he is to file his grievance, when

6   he should expect a response, or when he is required (or permitted) to move to the next level. Nor

7   did the grievance responses that invoked this portion of AR 740 give Plaintiff any further clarity

8   regarding when he could expect a response, or when he was permitted to proceed to the next

9   level. The language contained within AR 740 that such a grievance will be processed "as soon as

10  practicable," and that timeframes will be "adhered to as closely as possible" is confusing and

11  extremely vague, as this case demonstrates. Here, Plaintiff signed the informal level grievance

12  memorandum response on June 3, 2016, indicating that the response to the informal level

13  grievance significantly exceeded the forty-five days provided in AR 740 for a grievance

14  submitted in mid-February. This did not "closely adhere to" the forty-five-day timeframe. The

15  first level grievance was dated April 4, 2016, and Plaintiff signed the first level grievance

16  memorandum response on July 21, 2016, which also significantly exceeded, and did not "closely

17  adhere to," the forty-five-day timeframe for responding to first level grievances.

18        Defendants' also argue that Plaintiff did not properly exhaust his administrative remedies

19  because the timeframes were suspended until the IG rendered a disposition on the grievance. As

20  of the time the corrected reply brief was filed, Defendants acknowledge that the IG had not even

21  decided whether to *initiate* an investigation, let alone conduct it and render a disposition. Is

22  Plaintiff supposed to wait indefinitely to file his action, while the memories of witnesses fade

23  and evidence is lost? AR 740 contains no explanation for an inmate regarding how to go about

24  exhausting administrative remedies when a matter has been referred to the IG, nor any

25  explanation regarding how an inmate proceeds when a decision on whether to even initiate an

26  investigation has not been made more than a year after the incident occurred.

27        If AR 740 provided that the grievance timeframes were suspended for a specified period

28  of time while the IG decided whether to initiate an investigation or while an investigation was

1    pending, or if Plaintiff had been advised within the response to his grievance filings on this topic,

2    the court's conclusion might be different. Under these circumstances, however, the record

3    demonstrates that this administrative scheme was "so opaque" that it was "practically speaking,

4    incapable of use." *Ross*, 136 S.Ct. at 1859.

5           Finally, the court will discuss Defendants' argument that Plaintiff did not properly

6    exhaust his administrative remedies because he filed suit before receiving the second level

7    response, or at least for the expiration of the sixty days the prison normally had to respond to a

8    second level grievance under AR 740. Exhaustion is measured "at the time the action is filed."

9    *Andres*, 867 F.3d at 1079 (citation omitted). When Plaintiff filed this action, on May 25, 2016, he

10   had been told in response to both his informal and first level grievances that the timeframes were

11   suspended until a disposition was received from the IG, even though there still has not been a

12   determination by the IG of whether to even initiate an investigation, and that the regular

13   timeframes for responses were suspended due to his transfer, but had not been "closely adhered

14   to." Therefore, at the time he filed his action, administrative remedies were unavailable to him.

15          For these reasons, Defendants' motion, which is premised on a failure to properly exhaust

16   administrative remedies, should be denied.

17                                    **IV. RECOMMENDATION**

18          IT IS HEREBY RECOMMENDED that the District Judge enter an order **<u>DENYING</u>**

19   Defendants' motion (ECF No. 13).

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: December 6, 2017.

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE