**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CHARLES LAFFERTY,

    Plaintiff

v.

BRIAN WILLIAMS, et. al.,

    Defendants

Case No.: 3:16-cv-00279-RCJ-WGC

**Report & Recommendation of United States Magistrate Judge**

Re: ECF No. 63

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF No. 63.) Plaintiff filed a response. (ECF No. 64.) Defendants filed a reply. (ECF No. 65.) For unknown reasons, Defendants filed a second reply brief. (ECF No. 67.) Under Local Rule 7-2(b), a motion, response and reply brief are permitted, and any additional briefing requires leave of court. Defendants did not seek leave of court to file additional briefing; therefore, the court has not considered the second reply brief.

After a thorough review, it is recommended that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 6.) The events giving rise to this action took place while Plaintiff was housed at Southern Desert Correctional

Center (SDCC). (*Id.*) Defendants are Senior Correctional Officer Dale Roberson, Sergeant Glenn Fowler, and Correctional Officer Isaiah Santos. (*Id.*)

On screening, the court allowed Plaintiff to proceed with a single Eighth Amendment excessive force claim against Roberson, Fowler and Santos. (ECF No. 5.) Plaintiff alleges that Roberson held Plaintiff immobile on the ground while Fowler struck Plaintiff in the head with a closed fist upwards of fifteen times. After he had been fully restrained, was lying on the ground, and posed no threat, Plaintiff claims that Santos sprayed him in the face with chemical agents without warning. Then, to move Plaintiff, Roberson carried him by the chain on his shackles, and Fowler carried him by the hair.

Defendants move for summary judgment, arguing they did not use excessive force, and alternatively, that they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

1  If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

## III. DISCUSSION

**A. Eighth Amendment Excessive Force Standard**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. It "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v. McKinney*, 394

1  F.3d 710, 711 (9th Cir. 2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). "When
2  prison officials maliciously and sadistically use force to cause harm, contemporary standards of
3  decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*, 475 U.S. at 327). The Ninth
4  Circuit has held, however, that while *Whitley* used the phrase "maliciously and sadistically," it
5  does not require proof of that the officer enjoyed the use of force. *Hoard v. Hartman*, 904 F.3d
6  780 (9th Cir. 2018). Instead the focus is on whether the officer had purpose to cause harm: "[A]n
7  officer who harms an inmate in part of a good-faith effort to maintain security has acted
8  constitutionally, but an officer who harms an inmate 'for the very purpose of causing harm,' … has
9  engaged in excessive force, provided that the other elements of excessive force have been met."
10 *Id.* at 788 (quoting *Whitley*, 475 U.S. at 321).
11     In determining whether the use of force is excessive, courts are instructed to examine "the
12 extent of the injury suffered by an inmate[;]" "the need for application of force, the relationship
13 between that need and the amount of force used, the threat 'reasonably perceived by the responsible
14 officials,' and 'any efforts made to temper the severity of the forceful response.'" *Hudson*, 503
15 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).
16     An inmate need not establish serious injury; however, the lack of serious injury is relevant
17 to the Eighth Amendment inquiry. *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). "The
18 extent of injury may also provide some indication of the amount of force applied." *Id*.
19 **B. Analysis**
20     According to Defendants, on February 9, 2019, Plaintiff had been brought to Sergeant
21 Fowler's office to sign disciplinary paperwork regarding a previous assault on a correctional
22 officer. (ECF No. 63-2.) In the report regarding the incident at issue in this litigation, Fowler noted
23 that Plaintiff had made verbal threats about assaulting another officer when he had an opportunity.

5

Fowler called for Senior Correctional Officer Roberson to back up Trainee Officer Dacken (not a defendant), due to Fowler's perception that Plaintiff posed a security threat.

Plaintiff's left hand was released from restraints, and he signed the paperwork. After signing the paperwork, Plaintiff hit Sergeant Fowler in the face with a closed fist. Plaintiff then attempted to come toward Fowler, and Fowler struck Plaintiff in the face defensively. Roberson, who had been standing behind Plaintiff, was then able to take Plaintiff to the ground. Roberson attempted to re-handcuff Plaintiff but because of his resistance was unable to do so. Fowler put out a call for assistance. Then Officers Lara (not a defendant) and Santos responded. They became engaged in the struggle. Plaintiff did not follow Fowler's commands to stop resisting, but remained combative. Plaintiff attempted to get up off the ground, rolled around on the ground in an effort to avoid being handcuffed and secured, and kicked at staff. Officer Lara assisted Dacken in controlling Plaintiff's legs. Plaintiff attempted to spit on Fowler and other staff. He continued resisting and spitting. Fowler instructed Roberson to reapply the handcuffs. Roberson was unable to do so. Due to his continued resistance, Plaintiff was told that pepper spray would be deployed. Plaintiff ignored the commands and warnings, and so Officer Santos made the decision to deploy the pepper spray which resulted in Plaintiff's compliance to be handcuffed. (ECF Nos. 63, 63-3, 63-4.)

Medical was called and arrived two minutes later. Plaintiff was moved to the showers to wash away the pepper spray. He was then escorted to the infirmary and evaluated by medical and a photograph was taken. (ECF No. 63-6 (photo).) Defendants contend that the photograph shows Plaintiff did not suffer substantial injuries. They assert that Nurse John completed an evaluation, and no trauma was noted. Instead, it was only noted that his eyes were red, and there were slight red marks on his wrists. No treatment was needed.

In his opposition, Plaintiff contends that there are contradictions between in Defendants evidence as to whether Fowler hit Plaintiff once or twice. He further asserts that there are contradictions in Defendants' evidence regarding whether chemical agents were used before or after Plaintiff was fully restrained.

With respect to the extent of the injury suffered by Plaintiff, Defendants have submitted evidence that Plaintiff was placed in the decontamination shower after the incident, was evaluated by medical and required no treatment.[1] While the evidence reveals that Fowler struck Plaintiff in the face once or twice after Plaintiff had punched him in the face, the photograph of Plaintiff's face shows no discernable injuries.

Regarding the need for application of force and the relationship between that need and the amount of force used, Defendants have proffered evidence that force was utilized because Plaintiff assaulted Fowler, and then continued to aggressively resist being restrained. The evidence reflects that they only used that force (first physical force and then pepper spray when Plaintiff was still not compliant) they reasonably perceived as necessary to restore order and maintain security. The evidence suggests that the officers reasonably perceived a threat from Plaintiff because he had just been subject to disciplinary action for assaulting another officer, made threats to assault another officer when he had the opportunity, he did assault Fowler, and then behaved aggressively when Defendants tried to restrain him following that assault. Finally, Defendants' evidence demonstrates

---

[1] Defendants' motion references Exhibits E and G as relevant to Nurse Johns' observations/report. (*See* ECF No. 63 at 8:2.) Exhibit G is the photograph. (ECF No. 63-6.) Defendants did not submit an Exhibit E. Defendants should be careful in the future to actually submit referenced exhibits. In this instance, this is not fatal to Defendants' motion because the investigative reports by the officers involved and Notice of Charges contain Defendants' statements that medical was called and Nurse John directed that Plaintiff be placed in the shower for decontamination and then was transported to the infirmary, was assessed by Nurse John and no injuries were reported. (ECF Nos. 63-3, 63-4.)

that they made efforts to temper the force used by repeatedly giving Plaintiff verbal commands to comply, and warning him that a failure to do so would result in additional force, including the use of chemical agents.

Defendants have met their burden under Rule 56. In order to defeat Defendants' motion for summary judgment, Plaintiff must establish a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A). To do so, Plaintiff must cite the specific evidence in the record (depositions, documents, affidavits, discovery responses, etc.). Fed. R. Civ. P. 56(c)(1)(A). He may also demonstrate that the materials cited by Defendants do not establish the absence of a genuine dispute or that Defendants cannot produce admissible evidence to support those facts. Fed. R. Civ. P. 56(c)(1)(B).

The only evidence Plaintiff submits in support of his motion are Defendants' discovery responses, and the only issues he raises in his opposition that are supported by reference to any evidence are: that there is a contradiction in the evidence as to whether Fowler hit Plaintiff once or twice; and, whether he was pepper sprayed before or after he was restrained.

As to how many times Fowler hit Plaintiff: Roberson's report states that after Plaintiff struck Fowler in the face, this caused Fowler to respond with a closed fist strike to the right side of Plaintiff's face. Dacken's report states that after Plaintiff punched Fowler in the face, Fowler struck Plaintiff with his right fist. The report attributed to Fowler's version of events states that after Plaintiff struck Fowler in the face with a closed fist, Fowler struck Plaintiff in the face twice with a closed fist in self-defense. The Notice of Charges indicates that after Plaintiff struck Fowler with a closed fist in the face, Fowler balled his right fist and struck Plaintiff in the face and gave verbal commands for Plaintiff to stop. When Plaintiff continued to aggressively move toward Fowler, Fowler struck Plaintiff in the face with his right fist. (ECF Nos. 63-3, 63-4.)

Fowler admitted in his response to Plaintiff's first set of requests for admissions that he punched Plaintiff in the face several times with a closed fist. (ECF No. 64 at 18.) He indicated in a later response that he did this while attempting to defend himself. (*Id.*) Roberson stated in a discovery response that he could only recall with certainty that Fowler struck Plaintiff in the face once in self-defense. (ECF No. 64 at 29.)

The evidence is clear that in response to Plaintiff punching him, Fowler hit Plaintiff in the face one or two times in self-defense and in response to Plaintiff's continued aggression and failure to respond to commands to stop. Plaintiff does not submit any competent evidence to dispute that he initiated the altercation by punching Fowler with a closed fist after signing his disciplinary paperwork. Nor does he submit evidence to dispute that he aggressively resisted being restrained throughout. Importantly, he does not submit any evidence that disputes that Fowler was acting in self defense when he hit Plaintiff after Plaintiff had punched him in the face and further resisted being restrained.

As such, the undisputed evidence demonstrates that Fowler acted in self-defense after being struck by Plaintiff, and in good faith to restrain Plaintiff and restore order. Plaintiff has produced no evidence that Fowler acted to harm Plaintiff "for the very purpose of causing harm." *Hoard,* 904 F.3d at 788.

Plaintiff has presented no evidence to rebut that presented by Roberson that Roberson acted reasonably under the circumstances in bringing Plaintiff to the ground after the altercation between Plaintiff and Fowler and in order to restrain Plaintiff in order to maintain security.

Finally, as to Santos, Plaintiff argues there is a dispute of fact as to whether Santos deployed pepper spray before or after he was restrained. Roberson's report only states that additional efforts by custody staff and chemical agents resulted in successful application of mechanical restraints.

Dacken's report states that after Roberson was able to take Plaintiff to the ground, and attempted to apply restraints, Plaintiff was kicking and aggressively moving his legs. At that point, Santos sprayed him with pepper spray. Then, the officers were able to successfully restrain Plaintiff. Fowler's report states that the officers were eventually able to place Plaintiff in restraints, but then he began spitting on staff. He also kept attempting to get off the ground and was given repeated verbal commands to stay on the ground. He was non-compliant, so Santos deployed the pepper spray and Plaintiff became compliant. Santos' report states that while the officers were trying to restrain Plaintiff, verbal commands were given but Plaintiff was not compliant. As a result, he was warned that chemical agents would be deployed. Plaintiff still refused to comply, so chemical agents were deployed and resulted in compliance. The Notice of Charges states that Plaintiff was given commands to stop resisting, and he refused and started spitting. Roberson was unable to re-apply the wrist restraints due to Plaintiff being aggressively combative, and as a result Santos deployed the pepper spray to gain compliance.

In discovery, Plaintiff asked the defendants whether he was already fully restrained when the pepper spray was deployed. Fowler denied this, stating that Plaintiff was combative resisting restraints and attempting to propel spit on staff. (ECF No. 64 at 19.) Roberson denied that chemical agents were used after Plaintiff was already restrained. (ECF No. 64 at 29.) Santos, who deployed the pepper spray, admitted that he used chemical agents on Plaintiff after he was fully restrained, but states that Plaintiff was continuously being belligerent and aggressive towards staff, and trying to get up and so the pepper spray was used only to gain compliance. (ECF No. 64 at 37.)

Taking the facts in the light most favorable to Plaintiff, the pepper spray was deployed after he was fully restrained; however, Plaintiff has not submitted any competent evidence to dispute that pepper spray was used because even though he was restrained, he continued to resist and try

to get up off the ground. In other words, Plaintiff has presented no evidence to refute that Santos deployed the pepper spray to get Plaintiff to comply and restore order. Conversely, there is no evidence that Santos utilized the pepper spray with the purpose of inflicting harm.

In sum, Defendants met their burden under Rule 56 by presenting evidence that a reasonable amount of force was used after Plaintiff assaulted Fowler in order to gain Plaintiff's compliance and restrain him to restore order and maintain security. The evidence demonstrates that Plaintiff did not suffer any significant injuries as a result of the incident, and required no medical treatment; that the use of force was necessary because Plaintiff assaulted Fowler, and then continued to actively resist being restrained; and, that the amount of force used was proportional to the need for force; the officers reasonably perceived a threat by Plaintiff given that he had been disciplined for assaulting an officer, made threats to assault another officer when he had the opportunity, and his aggressive behavior during the incident; and, that they gave verbal commands to temper the severity of the forceful response . Plaintiff did not meet his burden of producing evidence to create a genuine dispute as to any material fact. Therefore, summary judgment should be granted in favor of Defendants. In light of this conclusion, the court need not reach Defendants' qualified immunity argument.

///
///
///
///
///
///
///
///

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (ECF No. 63).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: October 24, 2019.

_William G. Cobb_
William G. Cobb
United States Magistrate Judge